FILED

2014 JAN -6  AM 11: 20

CLERK U.S. DISTRICT COURT
CEN. RAL DIST. OF CALIF.
SANTA ANA

BY __(AW)_____

John E. Mortimer, Esq. (SBN: 130526)
LAW OFFICE OF JOHN E. MORTIMER
43980 Mahlon Vail Circle #806
Temecula, California 92592
Tel. (951) 330-0063
Tel. (949) 202-1297
Fax (949) 502-0819
johnemortimer@gmail.com

Attorney for Plaintiff,
JOSE LUIS GARCIA

# UNITED STATES DISTRICT COURT

# CENTRAL  DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| JOSE LUIS GARCIA, | _ CASE NO: 8:13-cv-01588-AG-JPR |
| Plaintiff, | ¯ SECOND AMENDED COMPLAINT |
| v. | 1. VIOLATION OF HOMEOWNER BILL OF RIGHTS – **SINGLE POINT OF CONTACT** |
| JPMORGAN CHASE BANK, N.A.; U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE,SUCCESSOR IN INTEREST TO BANK OF AMERICA, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2007-HE7; and DOES 1 – 10 inclusive, | **2.** VIOLATION OF HOMEOWNER BILL OF RIGHTS – **DUAL TRACKING**<br>3. NEGLIGENT MISREPRESENTATION;<br>4. NEGLIGENCE;<br>5. VIOLATION OF B&P §17200 |
| Defendants. | |

PLAINTIFF'S SECOND AMENDED COMPLAINT

LAW OFFICE OF JOHN E. MORTIMER
43980 Mahlon Vail Circle, Suite 806 Temecula, California 92592 Tel. (951) 330-0063 Fax: (949) 502-0819

Plaintiff, JOSE LUIS GARCIA, by and through his counsel, files his SECOND amended complaint and for causes of action alleges as follows:

### PARTIES

1.      Plaintiff, JOSE LUIS GARCIA ("Plaintiff") is, and at all relevant times mentioned herein was, resident of Orange County, California, residing at: **629 S. Reseda Street, Anaheim, CA 92806** ("subject property").

2.      Defendant U.S. BANK NATIONAL ASSOCIATION ("USBANK") is a nationally chartered bank headquartered in Minnesota. US Bank is, and at all times mentioned herein was, conducting business in Orange County, California.  USBANK is trustee to the Trust CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2007-HE7 ("Trust") is a Real Estate Mortgage Investment Conduit ("REMIC"); that is, a special purpose vehicle through which the relevant promissory note has putatively been securitized.

3.      Defendant JPMORGAN CHASE BANK, N.A. ("Chase") is a national banking association with its principal place of business in Illinois. Chase is, and at all times mentioned herein was, conducting business in Orange County, California. Chase services a mortgage loan for Plaintiff on the subject property.

4.     Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 – 10, inclusive ("DOES"), and therefore sue them by fictitious names. Plaintiff will amend this complaint to allege DOES' true names and capacities when they are ascertained.

5.     Plaintiff is informed and believes and upon this basis alleges that DOES claim some right, title, estate, lien, or interest in the subject property, adverse to Plaintiff's own title. Each of these claims constitutes a cloud on Plaintiff's title to the subject property from which Plaintiff seeks relief.

6.     Plaintiff is informed and believes and upon this basis alleges that DOES are contractually, strictly, negligently, intentionally, or vicariously liable, and/or otherwise legally responsible in some manner for each and every act, omission, obligation, event, or happening set forth in this complaint, and that DOES are indebted to Plaintiff as hereinafter alleged.

## JURISDICTION AND VENUE

7.     Jurisdiction of this Court arises under *California Code of Civil Procedure §410.10 et seq.* The California Superior Court has jurisdiction over this action pursuant to *California Constitution Article VI §10*, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts." No other

basis of jurisdiction is implied in this case, which presents California state law claims regarding California real estate transactions conducted by California based entities.

8.      Venue is proper in this Court because Defendants' liability to Plaintiff arose within the jurisdictional region of this Court. This Court has jurisdiction over the parties. Plaintiff is a resident of Orange County, California.  All Defendants regularly engage in business within Orange County, California.

9.      Defendants herein purposefully directed their activities to the State of California and consummated a transaction with residents of the State of California, such as Plaintiff herein. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Orange, out of which this action arises and which forms the basis of this action.

10.     Plaintiff is suing for damages that are related to violation of California statutes and Homeowner's Bill of Rights ("HBOR"), wherein <u>amount of controversy Plaintiff is suing does not exceed $75,000.00.</u>

## <u>GENERAL AND FACTUAL ALLEGATIONS</u>

11.     Plaintiff bought his home in December 2004.

12.     On or about July 27, 2007, Plaintiff refinanced his home by executing a Note and Deed of Trust in the amount of $533,000.00 with ENCORE CREDIT. (Exhibit A – Deed of Trust)

13.    Plaintiff's loan was an adjustable-rate loan for a 30-year term subject to negative amortization and balloon payment at the end of the term. It also has a pre-payment rider which states that if within 36 months from the date of execution the borrower makes a full payment of the loan which means refinance the loan, borrower will pay a prepayment penalty of 20% of the amount of the original loan which is $106,600.00.

14.    Plaintiff's Note also "contains provisions that will change the interest rate and monthly payment". There may be a limit on the amount that the monthly payment can increase or decrease. The principal amount to repay could be greater than the amount originally borrowed, but no more than the maximum limit state in the note. **This is a [1]negative amortization loan.**

15.    Plaintiff was concerned of the affordability and risks of the loan terms, however, ENCORE promised Plaintiff that they would refinance the loan again within a short time at no cost to Plaintiff. Plaintiff was then induced to sign the Note.

16.    Plaintiff vested his Deed of Trust as a married man as his sole and separate property thereby recorded at the Official Records County of Orange on August 1, 2007. **(Exhibit A – Deed of Trust)**

---

[1] Negative-amortization loans as a class have the highest potential for what is known as payment shock. Payment shock is when the required monthly payment jumps from one month to the next, potentially becoming unaffordable to borrower such as Plaintiff.  Thus, California banned adjustable-rate, negative-amortization consumer loans in 2009 because they were deemed predatory.

PLAINTIFF'S SECOND AMENDED COMPLAINT

17.     The deed of trust states, **Paragraph 14 of the Deed of Trust**, under **Loan Charges**, *"If the loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the **<u>interest or other loan charges collected</u>** or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower."* **(Exhibit A - ¶ 14 of the Deed of Trust)**

18.     In late 2009, Plaintiff had suffered financial difficulty due to a job loss and lesser household income because of recession.

19.     Plaintiff applied for a loan modification with the current loan servicer, CHASE. Plaintiff made little progress. Plaintiff was given the run-around and a promise that loan modification application was under review.

20.     Throughout 2011, Plaintiff continued to resubmit his financial documents to CHASE.

21.     Plaintiff alleges California is the jurisdiction in which the Subject Property is located.

PLAINTIFF'S SECOND AMENDED COMPLAINT

22.    Plaintiff alleges his loan terms were in violation of **CA Finance Code § 4973(c),** which states:

> "(c) *A covered loan shall not contain a provision for negative amortization such that the payment schedule for regular monthly payments causes the principal balance to increase, unless the covered loan is a first mortgage and the person who originates the loan discloses to the consumer that the loan contains a negative amortization provision that may add principal to the balance of the loan."*

23.    Plaintiffs have properly alleged that Defendant BANA has breached the provisions within the note and deed of trust with regards to Defendant's obligation modify the loan if the law interpreted that the interest or other charges collected exceeds the permitted limits.

24.    Plaintiffs allege that they have fulfilled their obligations until the time they could no longer afford the payments because of the increasing monthly payments resulting from the unlawful negative amortization loan terms provided by ENCORE to Plaintiffs.

## FIRST CAUSE OF ACTION

### Violation of Homeowner Bill of Rights – Single Point of Contact

25.    Plaintiff re-alleges and incorporates herein by reference the allegations made in paragraphs above inclusive, as though fully set forth herein.

26.     **California law provides that lenders must provide a "single point of contact" for borrowers to discuss their loans**. This new law was enacted specifically to address the persistent problem of lenders setting forth a parade of divergent team members in far-flung regions of the country who would shuttle borrowers around the telephone tree looking for answers on their home that would never arrive until the auctioneer had completed the transfer of the property to the lender.

27.     The new law against this nefarious practice became effective on January 1, 2013. It is codified in California Civil Code § 2923.7(a).

28.     Under HBOR,

*"This bill would require that a specified declaration, notice of default, notice of sale, deed of trust, assignment of a deed of trust, substitution of trustee, or declaration or affidavit filed in any court relative to a foreclosure proceeding or recorded by or on behalf of a mortgage servicer shall be accurate and complete and supported by competent and reliable evidence. The bill would require that, before recording or filing any of those documents, a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information. The bill would, until January 1, 2018, provide that any mortgage servicer that engages in multiple and repeated violations of these requirements shall be liable for a civil penalty of up to $7,500 per mortgage or deed of trust, in an action brought by specified state and local government entities, and would also authorize administrative enforcement against licensees of the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate."*

8

29.    Here, Defendant CHASE simply ignored the California law by failure to provide Plaintiff with a single point of contact even though Plaintiff requested CHASE several times through the non-profit agent working with him since March 2013.

30.    Plaintiff does not speak English fluently and needed the assistance of a representative who can speak his language and be able to assist him pursuant to the enacted law of the Homeowner's Bill of Rights.

31.    CHASE's conduct failed the specific requirement of the provision of HBOR because there was no update or communication to Plaintiff.

32.    As a consequence of the defendants' practice in this regard, Plaintiff has suffered and will continue to suffer general and special damages in an mount according to proof as set forth below, and also presents a ripe and justiciable controversy for this court's immediate equitable adjudication for which money damages would not be appropriate and without which the plaintiff will suffer irreparable injury in the loss of his home and his family's resultant homelessness.

33.    On March 18, 2013, Plaintiff sought the assistance of a non-profit organization when he decided to apply again for a loan modification.  An application was submitted to CHASE by the non-profit organization via Federal Express.

34.    On April 4, 2013, Plaintiff was contacted by CHASE requesting additional documents. Plaintiff provided the documents through the non-profit agent. Non-profit

agent faxed the documents to CHASE the same day and requested a single point of contact to be assigned to Plaintiff.

35.     On April 8, 2013, Plaintiff was contacted by CHASE requesting additional documents. Plaintiff provided the documents through non-profit agent. Non-profit agent faxed the documents to CHASE the same day and requested a single point of contact to be assigned to Plaintiff.

36.     On or about April 29, 2013, a Notice of Default was recorded by CHASE stating that Plaintiff owed <u>$8,973.00 as of April 26, 2013</u>. **(Exhibit B – Notice of Default)**

37.     Plaintiff alleges that the Notice of Default contains a Declaration of Compliance pursuant to the HBOR and 2923.55. On March 28, 2013, CHASE signed a Declaration in Compliance of the 2923.55 and checked the boilerplate statement which states that:

*"The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code §2923.55. Thirty days or more have elapsed these due diligence efforts were completed."* **(See Exhibit B – NOD – Declaration of Compliance)**

38.     Defendants' representation was not true.

39.     Plaintiff alleges this Declaration was executed on March 28, 2013 by James Ranaldi, Operations Specialist in Jacksonville Florida while Plaintiff was on the process of applying for loan modification submitted on March 18, 2013. However, the Declaration of Compliance states that "*Thirty days or more have elapsed these due diligence efforts were completed.*" This is another proof of CHASE robo-signing a Declaration of Compliance. The dates just do not tally, unless CHASE can foresee the future.

40.     As discussed above, on April 4, 2013 and April 8, 2013, Defendant CHASE contacted Plaintiff for additional documents to complete the review for the loan modification. However, they have already determined through the Declaration of Compliance on March 28, 2013 that they have already contacted Plaintiff in the future. There is a question of veracity on this Notice of Default that the jury needed to hear.

41.     On April 30, 2013, Plaintiff was contacted by CHASE again requesting additional documents. Plaintiff provided the documents through non-profit agent. Non-profit agent faxed the documents to CHASE the same day and requested a single point of contact to be assigned to Plaintiff.

42.     Plaintiff further alleges CHASE has failed to assign a **"single point of contact"** as required by HBOR, which is a violation of HBOR's strict provision of assigning a borrower a single point of contact when borrower requested.

## SECOND CAUSE OF ACTION

### Violation of Homeowner Bill of Rights – Dual Tracking

43.   Plaintiff re-alleges and incorporates herein by reference the allegations made in paragraphs above inclusive, as though fully set forth herein.

44.   California law also forbids the practice of dual tracking: engaging in purportedly good faith negotiations with a homeowner regarding a workout or modification on his home while simultaneously taking the steps necessary to execute a non-judicial foreclosure.  That new law is codified in California Civil Code § 2923.6(c).

45.   Plaintiff alleges he has not received a final determination of his application; however, Chase had already scheduled a Trustee's Sale date which is a clear violation of HBOR's strict provision on **"dual tracking"**.

46.   On August 16, 2013, Plaintiff filed his action in the Orange County Superior Court under the grounds that Defendants violated the HBOR.

47.   On or about October 10, 2013, State Court granted a TRO enjoining Defendants from foreclosing Plaintiff's home in violation of HBOR. In addition, the Court ordered Plaintiff to make $1,601.00 monthly payment to his counsel's Trust Account.

48.   On October 11, 2013, Defendants removed Plaintiff's action to the District Court.

49.     On October 16, 2013, Plaintiff deposited $1,601.00 to counsel's Trust Account and has been continuously depositing the ordered amount in compliance with the Court order.

50.     On October 17, 2013, Plaintiff filed a Motion to remand his action back to State Court. However the Court denied Plaintiff's motion to litigate his matter in the state court.

51.     Defendants continue to give Plaintiff the run around without a final determination of Plaintiff's loan modification application. Plaintiff was unable to get a decision regarding the loan modification that began in January 2013. It was in constant review without any result. Plaintiffs were informed that they need to re-submit updated financial documents.

52.     Defendants have purposefully delayed truthful and meaningful communication to the last minute to discuss any such available loss mitigation options with Plaintiff before proceeding with formal foreclosure process by filing a notice of default. Defendant systematically employed such tactics so that Plaintiff would incur additional late fees, penalties, charges related to foreclosure to increase the amount due and owing.

53.     Defendant CHASE engaged in dual tracking as discussed above, that Plaintiff submitted a complete loan modification. Even CHASE called Plaintiff to

PLAINTIFF'S SECOND AMENDED COMPLAINT

request for more updated documents which ascertained they received Plaintiff's application. However, that is all they did. Request for additional documents until Plaintiff fell into a state of complacency. CHASE strung Plaintiff along and lulled him to sleep with a false sense of hope that something would be done to remedy the fallout from its "balloon note", while at the same time taking the steps necessary to conduct a non-judicial foreclosure on the courthouse steps by recording a Trustee's Sale, as discussed above.

54.     As a consequence of defendant's practice in this regard, Plaintiff has suffered and will continue to suffer general and special damages in an amount according to proof as set forth below, and also presents a ripe and justiciable controversy for this court's immediate equitable adjudication for which money damages would not be appropriate and without which the plaintiff will suffered irreparable injury in the loss of his home and his family's resultant homelessness.

55.     Plaintiff therefore seeks injunctive relief to enjoin Defendants and its agents from foreclosing his home in the future.

56.     Plaintiff therefore demands civil penalties against Defendants, permanent injunction of any Trustee's Sale against subject property, and demands damages in an amount to be determined at trial.

PLAINTIFF'S SECOND AMENDED COMPLAINT

# THIRD CAUSE OF ACTION

## Negligent Misrepresentation

57.     Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

58.     Plaintiff alleges Defendants negligently made a false representation to him.

59.     Defendants represented to Plaintiff that they would assist him to avoid defaulting on his loan by offering a good faith loan modification review.

60.     On March 28, 2013, CHASE signed a Declaration in Compliance of the 2923.55 and checked the boilerplate statement which states that: *"The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code §2923.55. Thirty days or more have elapsed these due diligence efforts were completed."* **(See Exhibit B – NOD – Declaration of Compliance)**

61.     Defendants' representation was not true.

62.     Plaintiff alleges this Declaration was executed on March 28, 2013 by James Ranaldi, Operations Specialist in Jacksonville Florida while Plaintiff was on the process of applying for loan modification and submitted a loan modification on March 18, 2013. *"Thirty days or more have elapsed these due diligence efforts were completed."*

---

PLAINTIFF'S SECOND AMENDED COMPLAINT

63.    As discussed above, on April 4, 2013 and April 8, 2013, Defendant CHASE contacted Plaintiff for additional documents to complete the review for the loan modification. However, they have already determined through the Declaration of Compliance on March 28, 2013 that they have already contacted Plaintiff in the future? There is a question of veracity on this Notice of Default that the jury needed to hear.

64.    Defendants intended for Plaintiff to rely on this misrepresentation. Defendants prolonged the review of any loan modification.

65.    Plaintiff reasonably relied on Defendants' misrepresentation, waiting months for his application to be processed and months more for actual review and left Plaintiff wondering if he would be homeless soon.

66.    Plaintiff was harmed by his reliance being forced file a lawsuit and request the Court for a Temporary Restraining Order to enjoin CHASE and their agents to against Trustee's Sale of Plaintiff's property.

67.    Plaintiff demands damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Negligence

68.    Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

PLAINTIFF'S SECOND AMENDED COMPLAINT

69.     Defendants owed a duty of care to avoid foreseeable injury to Plaintiff's person or property. Defendants breached that duty by colluding to lure Plaintiff into predatory loan and Defendant knew or should have known Plaintiff would default on.

70.     Defendants represented to Plaintiff that they would assist him to avoid defaulting on his loan by offering a good faith loan modification review.

71.     The deed of trust states, **Paragraph 14 of the Deed of Trust**, under **Loan Charges**, *"If the loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the **<u>interest or other loan charges collected</u>** or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower."* **(Exhibit A - ¶ 14 of the Deed of Trust)**

72.     As a direct and foreseeable result of Defendant's behavior, Plaintiff suffered harm, including but not limited to the destruction of his credit, being forced to be on default and now facing foreclosure.

73.     Defendants processed and purportedly reviewed Plaintiff's loan modification application which required substantial financial documents of Plaintiff,

PLAINTIFF'S SECOND AMENDED COMPLAINT

verification of his employment, income tax returns, bank statements and other confidential matters that Plaintiff has to disclose in order to facilitate the application process.

74.    Defendants' breaches are the actual and proximate cause of Plaintiff's damages because, but for Defendants' breaches and conduct, Plaintiff has and will continue to suffer reasonable and foreseeable consequential damages resulting from such actions and representations, including payment of increased interest, longer loan payoff times, higher unaffordable mortgage payments, damage of his credit, additional income tax liability, costs and expenses incurred to prevent foreclosure, and other damages for breach of contract.

75.    Plaintiff demands damages in an amount to be determined at trial.

76.    Defendants breached his duty of ordinary care and good faith to Plaintiff, their duty not to put Plaintiff in a worse position than when they found him, and the terms of the Consent Order when they:

      a. Failed to give Plaintiff a fair review for HAMP assistance despite the fact that Plaintiff performed every term required for modification.

      b. Failed to help Plaintiff evaluate other options to keep him in his home pursuant to their promise to do so and according to California law and Homeowner Bill of Rights.

PLAINTIFF'S SECOND AMENDED COMPLAINT

77.    Defendants' breaches are the actual and proximate cause of Plaintiff's damages because, but for Defendants' breaches, Plaintiff's loan would have been modified, his arrearages would not have been capitalized, his loan would have become current, and his monthly payments would have been decreased, thereby avoiding default.

78.    Plaintiff suffered damages in late penalties, arrears that are no longer affordable.

79.    Plaintiff demands damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Violations of B&P Code § 17200

80.    Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth fully herein.

81.    Plaintiff alleges Defendants violated Bus. & Prof. Code §§ 17200, *et seq.*, by engaging in unlawful, unfair, and fraudulent business practices.

82.    Defendants unlawfully initiated foreclosure against the subject property in violating the California Civ. Code § 2923.5.

83.    Defendants unlawfully breached the loan contract- Deed of Trust.

84.    Defendants unfairly breached the implied covenant of good faith and fair dealing.

PLAINTIFF'S SECOND AMENDED COMPLAINT

85.    Defendants violated the Homeowner Bill of Rights Defendants evaluated Plaintiff modification assistance.

86.    Defendants' unfair business practices are substantial. Defendants have edged Plaintiff to foreclosure.

87.    There are no countervailing benefits to either consumers or competitors for tolerating Defendants' unfair business practices. When offering a loan modification, it ought to be of actual assistance. Moreover, Defendants ought not to be able to drag their feet to take advantage, against homeowners, HAMP guidelines, such as cut-off dates, etc.

88.    Plaintiff's injuries from Defendants' unfair business practices could easily have been avoided had Defendants reviewed Plaintiff's loan modification application in good faith. Had Defendants offered much better modification assistance, as they had the power to do, avoiding delay Plaintiff would have been in a much better financial position than where he is now.

89.    Defendants negligently made false representations. This fraudulent conduct is likely to deceive members of the public generally. Defendants offer modifications, but not actual assistance with such actions as described herein.

90.    Plaintiff has also lost money as late penalties and legal fees have been accrued and as he has striven to meet the terms of the loan contract.

PLAINTIFF'S SECOND AMENDED COMPLAINT

91.     Plaintiff demands Defendants disgorge their illicit profits and that Plaintiff received all monetary awards statutorily due him.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth above, during the pendency of the action.

2.     For a temporary restraining order, preliminary and permanent injunction preventing Defendant CHASE or anyone acting in concert with them form causing the property to be sold, assigned, transferred to a third party, or taken by anyone or any entity;

3.     For an order stating that Defendants engaged in unfair business practices.

4.     For damages, disgorgement, and injunctive relief;

5.     That the Court award Plaintiffs reasonable attorney's fees, reasonable costs of suit incurred and for such other further relief as the court may deem just and proper.

DATED:  January 3, 2014                    LAW OFFICE OF JOHN E. MORTIMER


                                          BY:   /s/ *John E. Mortimer*
                                                JOHN E. MORTIMER, ESQ.
                                                Attorney for Plaintiff
                                                JOSE LUIS GARCIA

PLAINTIFF'S SECOND AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA**        )
                              ) ss
**COUNTY OF ORANGE**          )

I am employed in the County of Orange, State of California; I am over the age of eighteen years and not a party to the within entitled action; my business address 1503 S. Coast Drive. Suite 318. Costa Mesa, CA 92626.

On the date set forth below, I served the within entitled document: **SECOND AMENDED COMPLAINT** on the interested party by the method of service indicated below, and addressed as follows:

| NAME & ADDRESS OF ATTORNEY | PHONE NUMBER | ATTORNEY FOR |
|---|---|---|
| Conrad V. Sison, Esq. (SBN:217197)<br>Daniel Solitro (SBN: 243908)<br>LOCKE LORD LLP<br>300 South Grand Avenue, Suite 2600<br>Los Angeles, CA 90071 | Tel: (213) 485-1500<br>Fax: (213) 482-1200 | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE,SUCCESSOR IN INTEREST TO BANK OF AMERICA, AS TRUSTEE FOR CERTIFICATEHOLDERS OF BEAR STEARNS ASSET BACKED SECURITIES I LLC, ASSET-BACKED CERTIFICATES, SERIES 2007-HE7 |
|  |  |  |

___    **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with US Postal Service on the same day with postage thereon fully prepaid at Costa Mesa, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    **BY PERSONAL SERVICE:** I delivered such envelope by hand to the office of the addressee.

☒    **BY FACSIMILE:**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Date:   January 3, 2014

*Myla A. Perez*
MYLA PEREZ

PLAINTIFF'S SECOND AMENDED COMPLAINT

# EXHIBIT "A"

Recording Requested By:
Civic Center Title Services

Van Nuys, CA 91411

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

Recording Requested By:
ENCORE CREDIT

**57.00**

**2007000478794 08:00am 08/01/07**

119 59 D11 18

0.00 0.00 0.00 0.00 51.00 0.00 0.00 0.00

And After Recording Return To:
ENCORE CREDIT
1833 ALTON PARKWAY
IRVINE, CALIFORNIA 92606
Loan Number: 414114

*195 28436*  ———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

MIN: 100386199994141143

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated   JULY 26, 2007        , together with all Riders to this document.
**(B)** "**Borrower**" is   JOSE LUIS GARCIA, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY.

Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is   ENCORE CREDIT

Lender is a   DELAWARE CORPORATION                                    organized
and existing under the laws of   DELAWARE
Lender's address is   1833 ALTON PARKWAY, IRVINE, CALIFORNIA 92606

**(D)** "**Trustee**" is   FIDELITY NATIONAL TITLE INSURANCE COMPANY, A CALIFORNIA CORPORATION
17911 VON KARMAN AVENUE, #300, IRVINE, CALIFORNIA 92614

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "**Note**" means the promissory note signed by Borrower and dated   JULY 26, 2007
The Note states that Borrower owes Lender   FIVE HUNDRED THIRTY-THREE THOUSAND AND 00/100                              Dollars (U.S. $  533,000.00     ) plus interest.

---

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2037                            .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☒ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☐ Second Home Rider | |
| ☐ Condominium Rider | ☒ Other(s) [specify] | |

PREPAYMENT RIDER TO SECURITY INST

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M)  "Escrow Items" means those items that are described in Section 3.
(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                            Page 2 of 14                    DocMagic eFarms 800-649-1362
www.docmagic.com

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                    of                              ORANGE                              :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

LOT 13, TRACT 2300, IN THE CITY OF ANAHEIM, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 68, PAGE 35 AND 36 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
A.P.N.: 083-351-13

SEE EXHIBIT "A"
ATTACHED

which currently has the address of  629  SOUTH  RESEDA  STREET
[Street]

ANAHEIM                              , California        92806        ("Property Address"):
[City]                                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 3 of 14                    DocMagic *eForms* 800-649-1362
www.docmagic.com

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                  Page 4 of 14                    DocMagic *eForms* 800-649-1362
                                                                                 www.docmagic.com

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                     Page 5 of 14                    DocMagic eForms 800-649-1362
www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 7 of 14                              DocMagic *eForms* 800-649-1362
                                                                                                    www.docmagic.com

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 8 of 14                    DocMagic *eFormes* 800-649-1362
                                                                                   www.docmagic.com

or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then:  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

    **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

    As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

    **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

    **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.**  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.**  Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Jose Luis Garcia_ (Seal)
JOSE L GARCIA                    -Borrower

_Martha Garcia_ (Seal)
MARTHA GARCIA                    -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:

_____

Witness:

_____

———————————— [Space Below This Line For Acknowledgment] ————————————

State of California                              )
                                                ) ss.
County of _Orange_____                 )

On __July 26, 2007__ before me, _Shawna S. Vardanyan, Notary Public_

personally appeared __JOSE L GARCIA  AND  MARTHA GARCIA_____

_____

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SHAWNA S. VARDANYAN
Commission # 1719393
Notary Public · California
Los Angeles County
My Comm. Expires Jan 22, 2011

NOTARY SEAL

_____
NOTARY SIGNATURE

_Shawna S. Vardanyan_____
(Typed Name of Notary)



-------------------[Space Above This Line For Recording Data]-------------------

Loan Number: 414114

# BALLOON RIDER

THIS BALLOON RIDER is made this 26th day of JULY 2007                , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to ENCORE CREDIT, A DELAWARE CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

629 SOUTH RESEDA STREET, ANAHEIM, CALIFORNIA 92806
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

MULTISTATE BALLOON RIDER
04/26/04                        Page 1 of 2          DocMagic *eFoms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_Jose Luis Garcia 7-26-07_   _Martha Garcia 7-26-07_
Borrower JOSE L GARCIA         Date    Borrower MARTHA GARCIA         Date

_____        _____
Borrower                       Date    Borrower                       Date

_____        _____
Borrower                       Date    Borrower                       Date

MULTISTATE BALLOON RIDER
04/26/04                          Page 2 of 2          DocMagic eForms 800-649-1362
                                                       www.docmagic.com

# PREPAYMENT RIDER

Loan Number: 414114

Date: JULY 26, 2007

Borrower(s): JOSE L GARCIA , MARTHA GARCIA

FOR VALUE RECEIVED, the undersigned ("Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed of even date herewith (the "Security Instrument") executed by Borrower, as trustor or mortgagor, in favor of  ENCORE CREDIT, A DELAWARE CORPORATION

("Lender"), as beneficiary or mortgagee. To the extent that the provisions of this Prepayment Rider (the "Rider") are inconsistent with the provisions of the Security Instrument, the provisions of the Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument.

**PREPAYMENT COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within **THIRTY-SIX** (  36    ) months from the date of execution of the Security Instrument I make a full Prepayment or, in certain cases a partial Prepayment, and the total of such Prepayment(s) in any 12-month period exceeds **TWENTY PERCENT** (    20.000 %) of the original Principal amount of this loan, I will pay a Prepayment charge in an amount equal to the payment of **SIX**        (    6    ) months' advance interest on the amount by which the total of my Prepayment(s) within that 12-month period exceeds **TWENTY PERCENT**            (    20.000   %) of the original Principal amount of the loan.

IN WITNESS WHEREOF, the Borrower has executed this Rider on the                          day of

_Jose Luis Garcia_  7-26-07          _Martha Garcia_  7-26-07
Borrower  JOSE L GARCIA          Date          Borrower  MARTHA GARCIA          Date

Borrower                                      Date          Borrower                                      Date

Borrower                                      Date          Borrower                                      Date

MULTISTATE PREPAYMENT RIDER
Document Systems, Inc. (800) 649-1362                                                          1/01

# EXHIBIT "A"

Order No. 19528436

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE IN THE CITY OF ANAHEIM, COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 13, Tract 2300, in the City of Anaheim, County of Orange, State of California, as per map recorded in Book 68, Page 35 and 36 of Miscellaneous Maps, in the office of the County Recorder of said County.

Assessor's Parcel No: 083-351-13

2          CLTA Preliminary Report Form - Modified (11/17/06)

# EXHIBIT "B"

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder
*$R0005810328$*   18.00

RECORDING REQUESTED BY:
LPS Default Title & Closing
3220 El Camino Real
Irvine, CA 92602

2013000254427 2:24 pm 04/29/13
63 405 N15 F13   4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:
NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 083-351-13      TS No.: 9526-3522      TSG ORDER No.:130065825-CA-MAI

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE
NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

### 違約通知
注：本文件包含一个信息摘要

### 채무 불이행 통지서
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

### AVISO DE INCUMPLIMIENTO
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO

### PABATID NG HINDI PAGKAKABAYAD
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

### THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

(The above statement is made pursuant to CA Civil Code Section 2923.3(c)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(c)(2).)

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$8,973.11** as of **04/26/2013**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and Deed of Trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a

condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**JPMorgan Chase Bank, National Association**
**c/o NBS Default Services, LLC**
**301 E. Ocean Blvd. Suite 1720**
**Long Beach, CA 90802**
**Attn: Foreclosure Dept.**
**Phone: 800-766-7751**
**Fax: 562-983-5379**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That NBS Default Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 07/26/2007, executed by JOSE LUIS GARCIA, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY, as Trustor(s), to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS NOMINEE FOR ENCORE CREDIT, ITS SUCCESSORS AND ASSIGNS, as beneficiary, recorded on 08/01/2007 as Document No.: 2007000478794, of Official Records in the Office of the Recorder of Orange County, California describing land therein as: As more fully described on said Deed of Trust.

Included among these obligations is one Note(s) for the original sum of **$533,000.00** that that beneficial interest under such Deed of Trust and the obligations secured thereby presently held by the beneficiary or its agent; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:
**Installment of Principal and Interest which became due on 12/01/2012, plus impounds and/or advances together with late charges, and all subsequent installments of principal, interest, plus impounds and/or advances and late charges and any reoccurring obligation that become due, including trustee's fees and expenses.**

That by reason therefore, the present beneficiary under such Deed of Trust has declared and does hereby

declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS WAIVER OF ANY OTHER FEES OWING TO THE BENEFICIARY, OR OTHER DEFAULT BY THE TRUSTOR, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

The beneficiary, mortgage servicer, or agent of beneficiary or mortgage servicer declares that it has complied with California Civil Code Section 2923.5. and/or 2923.55, wherever applicable. The Declaration is attached.

Dated: April 26, 2013

NBS Default Services, LLC, as Trustee for the Beneficiary

By: _____
                    Michelle McDonald

"We are attempting to collect a debt, and any information we obtain will be used for that purpose."

Borrower(s):          JOSE L GARCIA

Property Address:     629 S RESEDA ST
                      ANAHEIM CA 92806

Loan Number:          XXXXXX8022

# DECLARATION OF COMPLIANCE

### *(California Civil Code Section 2923.55)*

The undersigned mortgagee, beneficiary or authorized agent hereby declares, under the laws of the State of California, as follows:

☐ The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.55. Thirty days or more have elapsed since the borrower was contacted.

☑ The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.55. Thirty days or more have elapsed since these due diligence efforts were completed.

☐ The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.55 because:

   ☐ The real property is not owner-occupied residential real property as defined by the statute.

   ☐ The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

   ☐ The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

   ☐ The borrower has filed for bankruptcy under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code, and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case or granting relief from stay.

   ☐ The individual does not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

I certify under the laws of the state of California that the above is true and correct.

**JP Morgan Chase Bank, National Association**

Date:  03/28/2013         By:  _James Ranaldi (signature)_
                               _____
City/State: Jacksonville, FL        James Ranaldi
                                    Operations Specialist

ATTACHMENT TO NOTICE OF DEFAULT